UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PRINCE BRELAND, ANNIE COLEMAN and
MAXIME DIATTA, individually and on behalf of
all others similarly situated,

                           Plaintiffs,

          -against-

GEOFFREY ZAKARIAN, COUNTRY IN NEW
YORK, LLC, ADAM BLOCK, 3 SIXTY
HOSPITALITY, LLC, MOSHE LAX, THE
CARLTON HOTEL ON MADISON AVENUE
and CARLTON HOTEL MANAGEMENT, LLC,

                          Defendants.

08 CV 6120(LAK) (DFE)

## DEFENDANTS' MEMORANDUM OF LAW IN PARTIAL OPPOSITION TO PLAINTIFFS' MOTION FOR FLSA COLLECTIVE ACTION CERTIFICATION AND RULE 23 CLASS ACTION CERTIFICATION AND IN SUPPORT OF THEIR CROSS-MOTION TO DISMISS PLAINTIFFS' THIRD CAUSE OF ACTION

JACKSON LEWIS LLP
59 Maiden Lane
New York, New York 10038
(212) 545-4000

ATTORNEYS FOR
THE COUNTRY DEFENDANTS AND
THE CARLTON HOTEL DEFENDANTS
Todd H. Girshon (TG 7947)
Matthew A. Steinberg (MAS 3979)
Ravindra K. Shaw (RS 1944)

## TABLE OF CONTENTS

**Page No.**

SUMMARY OF ARGUMENT ...................................................................... 1

PRELIMINARY STATEMENT OF FACTS AND ALLEGATIONS ........................... 3

   A.  About Country ............................................................................. 3

   B.  Country's Pay Policies ................................................................ 3

   C.  Country's Uniform Pay Practices From April 2007 Through The Present ..................... 4

   D.  Provision of Meals ...................................................................... 5

   E.  Plaintiffs' Complaint ................................................................... 5

DEFENDANTS' PARTIAL OPPOSITION TO PLAINTIFFS' MOTION  FOR FLSA
COLLECTIVE ACTION CERTIFICATION AND  RULE 23 CLASS ACTION
CERTIFICATION ......................................................................................... 6

ARGUMENT .............................................................................................. 6

POINT I ...................................................................................................... 6

PLAINTIFFS AND THE PROPOSED CLASS MEMBERS ARE SIMILARLY SITUATED
ONLY WITH REGARD TO THEIR SHIFT PAY CLAIM AND THEREFORE AN FLSA
COLLECTIVE ACTION SHOULD BE CONDITIONALLY CERTIFIED IN LIMITED
FORM. ....................................................................................................... 6

   A.  Section 216(b) And The "Similarly Situated" Standard .................................. 6

   B.  To The Extent Plaintiffs' First Cause of Action For Overtime Violations Is Based On
Shift Pay, It Should Not Be Certified As An FLSA Collective Action For Any Period
After and Including April 2007 Because Plaintiffs Are Not Similarly Situated To The
Proposed Class Members and Any Purported Unpaid Overtime Violations Constituted
Unauthorized and Isolated Deviations From Country's Lawful Policies and
Procedures. ..................................................................................... 8

   C.  To The Extent Plaintiffs' First Cause of Action For Overtime Violations Is Based On
Allegations of Underreported Hours Worked, Delayed Recognition of Hours Worked,
and Altered Hourly Rates, It Should Not Be Certified As An FLSA Collective Action
Because Plaintiffs Have Not Shown That They Are Similarly Situated To The Proposed
Class Members. ............................................................................... 9

   D.  To The Extent Plaintiffs' First Cause of Action For Overtime Violations Is Based On
Defendants' Alleged Failure to Account for Meals Consumed, It Should Not Be

Certified As An FLSA Collective Action Because Plaintiffs Have Not Shown That They Are Similarly Situated To The Proposed Class Members. ................................... 12

E. To The Extent Plaintiffs' First Cause of Action For Overtime Violations Is Based On Failure to Pay For "Trailing Time," It Should Not Be Certified As An FLSA Collective Action Because Plaintiffs Have Not Shown That They Are Similarly Situated To The Proposed Class Members. ..................................................................................... 13

POINT II ........................................................................................................................ 14

PLAINTIFFS' PROPOSED FORM NOTICE AND FORM CONSENT TO SUE SHOULD BE REVISED. .................................................................................................................. 14

A. Regardless Of The Scope Of This Collective Action, Plaintiffs' Proposed Form Of Notice Must Be Modified. ........................................................................................ 14

1. The Text Of Plaintiffs' Proposed Notice Is Needlessly Confusing, Fails To Convey Judicial Neutrality And Is Overly Solicitous Of Claims. ......................................... 15

POINT III ....................................................................................................................... 16

PLAINTIFFS' NEW YORK LABOR LAW CLAIMS SHOULD NOT BE CERTIFIED AS CLASS CLAIMS BECAUSE PLAINTIFFS CANNOT SATISFY THE REQUIREMENTS OF FED. R. CIV. P. 23. ................................................................................................... 16

A. Rule 23 Standards. ..................................................................................................... 17

B. Plaintiffs' Rule 23 Motion Is Premature Because The Parties Have Not Exchanged Any Discovery and Plaintiffs Have Not Presented Sufficient Evidence To Satisfy The Rigorous Requirements of Rule 23. ............................................................................ 18

C. Plaintiffs Have Not Established That Their Second Cause Of Action Is Susceptible To Class Adjudication. .................................................................................................... 20

1. Plaintiffs Cannot Satisfy The Requirements Of Rule 23(a). ...................................... 20

2. Plaintiffs Cannot Satisfy The More Rigorous Requirements of Rule 23(b). ........... 22

D. Plaintiffs Cannot Establish That Their Fourth Cause of Action Is Susceptible to Class Adjudication. ............................................................................................................... 25

DEFENDANTS' CROSS-MOTION TO DISMISS PLAINTIFFS' THIRD CAUSE OF
ACTION......................................................................................................................28

ARGUMENT ..............................................................................................................28

POINT I........................................................................................................................28

    STANDARD OF REVIEW FOR MOTIONS FOR JUDGMENT ON THE PLEADINGS .... 28

POINT II .......................................................................................................................29

    THE FLSA REQUIRES ONLY "PROMPT" PAYMENT OF WAGES AND COURTS
    HAVE REPEATEDLY CONFIRMED THAT COUNTRY'S ALLEGED PAY PRACTICES
    DO NOT VIOLATE THE FLSA......................................................................................29

        A.  The FLSA and the Federal Prompt Payment of Wages Standard ................................. 29

        B.  Defendants' Undisputed Pay Practices As Alleged In the Third Cause of Action
            Comply With The FLSA's Prompt Payment Standard As A Matter Of Law............... 31

        C.  Plaintiffs' Third Cause of Action Is A Thinly Disguised Attempt to Circumvent the
            Limitations On Remedies Available Under the New York Labor Law ......................... 32

POINT III .....................................................................................................................33

    AT LEAST ONE FEDERAL COURT HAS REJECTED AN ATTEMPT TO READ STATE
    LAW TIMING OF PAYMENT REQUIREMENTS INTO THE FLSA AND THIS COURT
    SHOULD FOLLOW ITS REASONING.........................................................................33

CONCLUSION ............................................................................................................35

## TABLE OF AUTHORITIES

### FEDERAL CASES

Amchem Products v. Windsor,
521 U.S. 591 (1997) ............................................................................................................. 17

Amendola v. Bristol-Myers Squibb Co.,
558 F. Supp. 2d 459 (S.D.N.Y. 2008) .................................................................................. 7

AMPARO v. INS,
32 F. Supp. 2d 1337 (S.D. Fla. 1998) ................................................................................. 32

Archie v. Grand Central Partnership,
997 F. Supp. 504 (S.D.N.Y. 1998) ..................................................................................... 13

Arroyave v. Rossi,
No. 07-CV-20156 (S.D. Fla.  Mar. 12, 2008) .................................................................... 31

Arroyave v. Rossi,
No. 08-12008, 2008 WL 4605949 (11th Cir. Oct. 17, 2008) ........................................ 31, 32

ATSI Comm'ns Inc. v. Shaar Fund, Ltd.,
493 F.3d 87 (2d Cir. 2007) ................................................................................................. 28

Augustin v. Jablonsky,
No. 99 Civ. 312 (ORH), 2001 WL 770839 (E.D.N.Y. Mar. 8, 2001) ........................... 17, 23

Ayers v. SGS Control Services, Inc.,
No. 03 Civ. 9078, 2004 WL 2978296 (S.D.N.Y. Dec. 16, 2004) ...................................... 7

Barrentine v. Arkansas-Best Freight System,
450 U.S. 728 (1981) ........................................................................................................... 34

Basco v. Wal-Mart,
216 F. Supp. 2d 592 (E.D. La. 2002) ............................................................................ 23, 24

Basinger v. Wal-Mart Stores, Inc.,
No. 98-334-P-H, 1999 WL 33117106 (D. Me. Jan. 27, 1999) ...................................... 33, 34

Bell Atlantic Corp. v. Twombly,
550 U.S. 544, 127 S. Ct. 1955 (2007) ................................................................................ 28

Cabrera v. 211 Garage Corp.,
No. 05 CV 2272 (GBD), No. 07 CV 7313 (GBD),
2008 WL 3927457 (S.D.N.Y. Aug. 22, 2008) ........................................................................ 19

Caridad v. Metropolitan-North Commuter Railroad,
191 F.3d 283 (2d Cir. 1999) ................................................................................................. 17

Cleveland v. Caplaw Enterprises,
448 F.3d 518 (2d Cir. 2006) ................................................................................................. 28

Diaz v. Electronics Boutique of America Inc.,
No. 04 Civ. 0840E, 2005 WL 2654270 (W.D.N.Y. Oct. 13, 2005) .................................... 10, 11

Dunnigan v. Metropolitan Life Ins. Co.,
214 F.R.D. 125 (S.D.N.Y. 2003) ........................................................................ 22, 23, 24, 25

Flores v. Osaka Health Spa, Inc.,
No. 05 Civ. 962 (VM), 2006 WL 695675 (S.D.N.Y. Mar. 16, 2006) .................................... 10

General Telephone Co. of Southwest v. Falcon,
457 U.S. 147 (1982) ........................................................................................................ 17, 22

Hoffmann-La Roche, Inc. v. Sperling,
493 U.S. 165 (1989) ............................................................................................................... 6

In re IPO Sec. Litigation,
471 F.3d 24 (2d Cir. 2006) ............................................................................................... 18, 19

Jackson v. Marion County,
66 F.3d 151 (7th Cir. 1995) ................................................................................................. 31

Jerome v. United States,
318 U.S. 101 (1943) ............................................................................................................. 29

Kamean v. Local 363 et al,
109 F.R.D. 391 (S.D.N.Y. 1986) .......................................................................................... 20

Lee v. ABC Carpet & Home,
236 F.R.D. 193 (S.D.N.Y. 2006) ............................................................................................ 7

Levinson v. Primedia, Inc.,
No. 02 Civ. 2222 (CBM), 2003 WL 22533428 (S.D.N.Y. Nov. 6, 2003) ............................. 10

Libront v. Columbus McKinnon,
1984 WL 48915 (W.D.N.Y. Dec. 13, 1984) .......................................................................... 15

Luther v. Z. Wilson, Inc.,
528 F. Supp. 1166 (S.D. Ohio 1981) ................................................................. 30

Marshall v. Allen-Russell Ford, Inc.,
488 F. Supp. 615 (E.D. Tenn. 1980) ................................................................. 30

Mathis v. About Your Smile, P.C.,
No. 02-CV-597, 2002 WL 1878894 (E.D. Pa. Aug. 14, 2002) ............................ 29

Mendoza v. Casa De Cambio Delgado, Inc.,
No. 07 cv 2579 (HB), 2008 WL 938584 (S.D.N.Y. Apr. 7, 2008) ............... 9, 18, 20

Morales v. Plantworks, Inc.,
No. 05 Civ. 2349 (DC), 2006 WL 278154 (S.D.N.Y. Feb. 1, 2006) .................... 10

Morales-Arcadio v. Shannon Produce Farms, Inc.,
No. 605CV062, 2007 WL 2106188 (S.D. Ga. July 18, 2007) ............................. 30

Myers v. Hertz Corp.,
No. 02-CV-4325 (BMC), 2007 WL 2126264 (E.D.N.Y. July 24, 2007) ............... 33

Parker v. City of New York,
No. 04 cv 4476 (BSJ), 2008 WL 2066443 (S.D.N.Y. May 13, 2008) .................. 31

Pecere v. Empire Blue Cross and Blue Shield,
194 F.R.D. 66 (E.D.N.Y. 2000) .......................................................... 18, 19, 20, 25

Philip Morris Inc. v. National Asbestos Workers Medical Fund,
214 F.3d 132 (2d Cir. 2000) ............................................................................. 19

Potchin v. Prudential Home Mortg. Co.,
No. 97-CV-525 (CBA), 1999 WL 1814612 (E.D.N.Y. Nov. 12, 1999) ................. 25

Prizmic v. Armour, Inc.,
No. 05-cv-2503, 2006 WL 1662614 (E.D.N.Y. June 12, 2006) ..................... 6, 7, 9

Radamanovich v. Combined Ins. Co.,
214 F.R.D. 424 (N.D. Ill. 2003) ........................................................................ 23

Ruggles v. Wellpoint, Inc.,
253 F.R.D. 61 (N.D.N.Y 2008) .......................................................................... 19

Rutstein v. Avis Rent-A-Car System, Inc.,
211 F.3d 1228 (11th Cir. 2000) ..................................................................... 1, 23

Serapion v. Martinez,
119 F.3d 982 (1st Cir. 1997) ........................................................................ 34

Sirota v. Solitron Devices, Inc.,
673 F.2d 566, 571 (2d Cir. 1982) ................................................................. 19

Smith v. Local 819 I.B.T. Pension Plan,
291 F.3d 236 (2d Cir. 2002) ........................................................................ 29

Suthers v. Amgen Inc.,
441 F. Supp. 2d 478 (S.D.N.Y. 2006) ........................................................... 31

United States v. Klinghoffer Brothers Realty Corp.,
285 F.2d 487 (2d Cir. 1960) ........................................................................ 29

United States v. Savin,
349 F.3d 27 (2d Cir. 2003) .......................................................................... 29

In re Visa Check/Master Money Antitrust Litigations,
280 F.3d 124 (2d Cir. 2001) ........................................................................ 23

Wraga v. Marble Lite, Inc.,
05 Civ. 038, 2006 WL 2443554 (E.D.N.Y. Aug. 22, 2006) .......................... 6, 7

Wynn v. NBC,
234 F. Supp. 2d 1067 (C.D. Cal. 2002) ........................................................ 31

## STATE CASES

Jara v. Strong Steel Door, Inc.,
2008 NY Slip Op 51733U 20 Misc. 3d 1135A (N.Y. Sup. Ct. 2008) ............... 33

## FEDERAL STATUTES, REGULATIONS AND RULES

29 U.S.C. § 201 et seq .................................................................................. 1

29 U.S.C. § 206 (b) ...................................................................................... 29

29 U.S.C. § 207 ............................................................................................ 31

29 U.S.C. § 216(b) ........................................................................................ 6

29 U.S.C. § 260 ............................................................................................ 32

29 C.F.R. § 778.106 ........................................................................................................... 31

29 C.F.R. 778.109 ............................................................................................................. 12

Fed. R. Civ. P. 23(a) ........................................................................... 16, 17, 20, 21, 23, 32

## STATE AND LOCAL STATUTES AND REGULATIONS

26 M.R.S.A. § 621 ........................................................................................................ 33, 34

N.Y. Labor Law § 198 ....................................................................................................... 32

12 N.Y.C.R.R. § 137-1.1 et seq. ....................................................................................... 26

12 N.Y.C.R.R. § 137-3.8 .................................................................................................. 26

12 N.Y.C.R.R. § 142-2.2 .......................................................................................... 5, 26, 27

Defendants Geoffrey Zakarian, Country in New York, LLC ("Country"), Adam Block and Moshe Lax (collectively the "Country Defendants"); Defendants The Carlton Hotel, LLC, improperly named as Carlton Hotel on Madison Avenue, and Carlton Hotel Management, LLC (collectively the "Carlton Hotel Defendants") respectfully submit this memorandum of law: (1) in opposition to the motion of Plaintiffs Prince Breland, Annie Coleman and Maxime Diatta (collectively "Plaintiffs") seeking conditional certification of this action as a collective action pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., and a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"); and (2) in support of their cross-motion to dismiss Plaintiffs' Third Cause of Action for violation of the FLSA's prompt payment requirement, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

## SUMMARY OF ARGUMENT

In this action, two (2) former employees and one (1) current employee of New York City restaurant "Country" seek to inflate a discrete dispute regarding Country's limited use of shift-based pay into an unwieldy and potentially ruinous collective and class action against multiple defendants regarding Country's unquestionably lawful pay practices. Rather than reasonably limit certification of this action to current and/or former Country employees who were paid on a per-shift basis, and litigate the issue of whether Country's use of shift-pay caused Plaintiffs to suffer any damages, Plaintiffs seek to certify an FLSA collective action and/or a Rule 23 class action regarding a litany of "off-the-clock"-type claims such as alleged underreporting of hours worked, delaying recognition of hours worked, altering hourly rates, failing to account for meals consumed, and failing to pay wages for alleged "trailing" time. However, Plaintiffs' proffer absolutely no evidentiary support regarding these purported class-based violations and, instead, rely exclusively on declarations that are long on conclusory assertions and short on substance. Moreover, courts in the Second Circuit (and throughout the

1

country) have routinely refused to certify these types of "off-the-clock" wage and hour disputes on the ground that individualized "off-the-clock" disputes require a litany of mini-trials (i.e., as to the specific circumstances surrounding each alleged violation and the extent to which each putative class member engaged in unpaid compensable work time) and, therefore, are not susceptible to collective adjudication. Plaintiffs' attempt to "stir up" class-wide litigation by unnecessarily broadening the Plaintiffs' discrete dispute against Country about a discrete pay practice which occurred during a discrete period of time should be rejected.

Moreover, perhaps recognizing that the majority of their purported class claims are not susceptible to class-wide adjudication, Plaintiffs brazenly seek to invent an entirely new FLSA class-based cause of action which has never been recognized in this Circuit and which has been squarely rejected by courts outside this Circuit. Specifically, Plaintiffs' Third Cause of Action seeks to certify an FLSA collective action on the ground that Country violated the FLSA by paying its employees on their regular bi-weekly and/or semi-monthly payday. Of course, the FLSA does not preclude employers from paying employees on a bi-weekly or semi-monthly basis. To the contrary, Courts have routinely held that bi-weekly and/or semi-monthly payments (which are customary in most industries throughout the country) comport with the FLSA. Faced with this hurdle, Plaintiffs ask the Court to: (a) borrow an irrelevant New York state law which requires New York employers to compensate "manual workers" on a weekly basis; (b) apply this New York law in interpreting the FLSA (which no Court has ever done); (c) declare that because bi-weekly and/or semi-monthly payments allegedly violate New York law, they also, in turn, violate the FLSA; and (d) subject Country -- and, by extension, any employer in any industry throughout New York which utilizes a customary bi-weekly and/or semi-monthly payroll system -- to substantial FLSA liquidated damages that are not available (and not sought by Plaintiffs)

under New York law.  Plaintiff cannot articulate any judicial, legislative or practical arguments in support of concocting such an expansive new cause of action under the FLSA.  Accordingly, the Court should dismiss this cause of action as a matter of law without reaching the issue of certification.

## PRELIMINARY STATEMENT OF FACTS AND ALLEGATIONS

### A.   About Country

Country in New York, LLC operates a restaurant called "Country" that is located in The Carlton Hotel on Madison Avenue in Manhattan.  (Zakarian Dec. ¶ 2).[1]  Although the restaurant did not open to the public until in or about October 2005, Country undertook preparations to open the restaurant by hiring certain key managers and staff members from April 2005 to August 2005.  (Zakarian Dec. ¶ 3).  Country did not hire a full complement of "prep" cooks or line cooks until the restaurant opened to the public in or about October 2005. (Zakarian Dec. ¶ 10).

### B.   Country's Pay Policies

Country maintained and distributed to all employees an "Employee Welcome Manual" which set forth, among other things, Country's workplace policies and procedures. (Zakarian Dec. ¶ 4).  Country's policy and practice was to pay employees for the actual hours they worked as indicated on their clock-in and out report.  (Zakarian Dec. ¶ 5).  Further, it was Country's policy and practice that all non-exempt employees were to be paid 1.5 times their hourly rate for all hours worked over 40 in any workweek.  (Zakarian Dec. ¶ 6).  In the unlikely event employees' paychecks contained errors, employees were advised to bring the discrepancy to the attention of their department managers.  (Zakarian Dec. ¶ 5).  Country also maintained an "Open Door" policy and practice to resolve problems between managers and employees,

---

[1] References to "Zakarian Dec." are to the "Declaration of Geoffrey Zakarian," submitted herewith.

including concerns regarding any aspect of an employee's compensation. (Zakarian Dec. ¶¶ 7-8).

### C.   Country's Uniform Pay Practices From April 2007 Through The Present

On or about March 30, 2007, Country retained 3Sixty Hospitality, LLC ("3Sixty") to provide certain back office bookkeeping services for the restaurant including, among other things, payroll processing and administration. (Zakarian Dec. ¶ 11). Beginning as early as October 2006 and no later than April 1, 2007, Country ceased paying employees on a per-shift basis; assigned each prep shift, cook shift and other prep and/or line cook a specific hourly wage rate; compensated each prep shift, cook shift and other prep and/or line cook straight-time, at their regular hourly rate, for all hours worked up to 40 during a workweek; and compensated each prep shift, cook shift and other prep and/or line cook time and a half of their regular hourly rate for all hours above forty (40) during a workweek. (Zakarian Dec. ¶ 13). Furthermore, after April 2007, and indeed throughout the course of Country's existence, Country continued to maintain and strictly enforce its policies and procedures regarding payment of overtime compensation for all hours worked above 40 during a workweek. (Zakarian Dec. ¶ 13).

To the extent any current or former Country employees were asked to perform work without compensation, or to perform work for hours over 40 during their workweek without overtime compensation, such instances were isolated and unauthorized deviations from Country's lawful policies and procedures. (Zakarian Dec. ¶ 15). Additionally, to prevent this from ever occurring, Country maintained policies and procedures encouraging employees to immediately report instances in which they felt they were improperly paid. (Zakarian Dec. ¶ 16).

### D.   Provision of Meals

Like many other New York City restaurants, Country provides family-style meals to many of its employees.  (Zakarian Dec. ¶ 17).  In accordance with the New York State Department of Labor Minimum Wage Order for the Restaurant Industry ("Wage Order"), Country deducted no more than the amounts permitted in the Wage Order for meals provided to employees, including to prep and line cooks.  (Zakarian Dec. ¶ 18).  The composition of these meals changed from day to day and shift to shift, depending on the foods available in Country's kitchen and the items selected for the restaurant's menu.  (Zakarian Dec. ¶ 19).  The employees' meals consisted of adequate portions of nutritious high-quality foods, including at least one type of food from each of the four food groups set forth in the Wage Order.  (Zakarian Dec. ¶ 20).  As prep and line cooks, Plaintiffs exercised a great deal of control regarding the selection and preparation of these meals insofar as they generally cooked and prepared such meals for each other.  (Zakarian Dec. ¶ 21).

### E.   Plaintiffs' Complaint

Plaintiffs' Complaint alleges the following claims: (1) failure to pay overtime for hours worked in excess of 40 hours per week in violation of the FLSA; (2) failure to pay overtime in violation of the New York Labor Law ("NYLL"), §§ 198, 663(1), and 12 N.Y.C.R.R. § 142-2.2; (3) violation of the FLSA's prompt payment requirement; and (4) taking unlawful deductions for meals in violation of NYLL § 193.[2]

---

[2] Plaintiffs' Complaint (referenced as "Cmplt.") is attached to the Declaration of Scott A. Lucas as Exhibit "A."

**DEFENDANTS' PARTIAL OPPOSITION TO PLAINTIFFS' MOTION
FOR FLSA COLLECTIVE ACTION CERTIFICATION AND
RULE 23 CLASS ACTION CERTIFICATION**

**ARGUMENT**

**POINT I**

**PLAINTIFFS AND THE PROPOSED CLASS MEMBERS
ARE SIMILARLY SITUATED ONLY WITH REGARD TO
THEIR SHIFT PAY CLAIM AND THEREFORE AN FLSA
COLLECTIVE ACTION SHOULD BE CONDITIONALLY
CERTIFIED IN LIMITED FORM.**

Collective certification of Plaintiffs' First Cause of Action for overtime violations should be denied except to the limited extent it is based upon allegations that Country paid its current and former employees on a shift (rather than hourly) basis from September 2005 through March 2007. Plaintiffs have made no evidentiary showing to support their application for certification for any subsequent periods of time. Likewise, there is no factual basis to certify the First Cause of Action to the extent it is based upon conclusory allegations that Country (or any of the non-employer individuals or entities also named as Defendants in this action) underreported hours, altered hourly wage rates in paychecks, delayed recognition of hours, failed to account for meals in determining employees' regular rates of pay, and failed to pay for "trailing" time.

A.    **Section 216(b) And The "Similarly Situated" Standard**

Section 216(b) of the FLSA provides that an employee may bring a collective action on behalf of himself or other "similarly situated" employees. 29 U.S.C. § 216(b); Hoffmann-La Roche, Inc. v. Sperling, 493 U.S. 165 (1989). District Courts are vested with discretionary power, under "appropriate circumstances," to certify such actions. Id. at 169. The giving of such notice, however, is not mandatory. Id.; Wraga v. Marble Lite, Inc., 05 Civ. 038, 2006 WL 2443554, at *1 (E.D.N.Y. Aug. 22, 2006); Prizmic v. Armour, Inc., No. 05-cv-2503, 2006 WL 1662614, at *2 (E.D.N.Y. June 12, 2006). "[A] court may refuse to authorize notice or

postpone deciding the issue pending further discovery and motion practice." Amendola v. Bristol-Myers Squibb Co., 558 F. Supp. 2d 459, 467 (S.D.N.Y. 2008)

        In determining whether a plaintiff and the putative class members are similarly situated, "[t]he test is whether there is a factual nexus between the claims of the named plaintiff and those who have chosen to opt-in to the action." Lee v. ABC Carpet & Home, 236 F.R.D. 193, 197 (S.D.N.Y. 2006); Wraga, 2006 WL 2443554, at *1. Plaintiffs cannot establish that they are similarly situated to the putative class based solely on conclusory allegations that the defendant engaged in widespread wrongdoing. Ayers v. SGS Control Servs., Inc., 03 Civ. 9078, 2004 WL 2978296, at *4 (S.D.N.Y. Dec. 16, 2004). Rather, the plaintiffs must present some factual support for their allegations. Id.; see also Prizmic, WL 1662614, at *2 ("plaintiff must provide **actual evidence** of a factual nexus") (emphasis added). Absent evidence of a factual nexus between the plaintiff's experiences and those of the putative class members, an employer may be "unduly burdened by a frivolous fishing expedition conducted by plaintiff at the employer's expense." Id., at *2 (other citation omitted).

        As demonstrated below, the conclusory and unsupported allegations of widespread wrongdoing by the Plaintiffs in this case are generally insufficient to establish that they are similarly situated to the other "prep" and line cooks they seek to include in this collective action.

**B.**   **To The Extent Plaintiffs' First Cause of Action For Overtime Violations Is Based On Shift Pay, It Should Not Be Certified As An FLSA Collective Action For Any Period After and Including April 2007 Because Plaintiffs Are Not Similarly Situated To The Proposed Class Members and Any Purported Unpaid Overtime Violations Constituted Unauthorized and Isolated Deviations From Country's Lawful Policies and Procedures.**

Defendants deny any alleged violations of federal or state overtime laws from September 2005 through March 2007, including but not limited to any violations arising from the use of shift-based pay.   To obviate the need for unnecessary judicial intervention, however, Defendants acknowledge for the purposes of this motion that putative class members who were allegedly paid shift pay by Country from September 2005 through March 2007 may be similarly situated to the Plaintiffs in some respects under Section 216(b) of the FLSA.   Accordingly, Defendants do not contest collective certification of a limited putative class of "prep" and line cooks who allegedly did not receive some overtime pay because they were paid on a shift basis for that period of time.[3]

In April 2007, Country retained 3Sixty Hospitality, LLC, to provide back office bookkeeping services for the restaurant, including, among other things, payroll processing and administration. (Zakarian Dec. ¶ 11; see Cmplt, ¶¶ 44, 45(A), 45(d)).   By April 2007, Country completely ceased paying "prep" and line cooks on a shift-pay basis.   (Zakarian Dec. ¶¶ 12-13). Plaintiffs readily acknowledge that Country began "phasing out" shift-based pay in 2006 in favor of hourly wages.   (Cmplt. ¶ 83).   Plaintiffs have presented no allegations or evidence to suggest that shift pay was still in use in April 2007 or thereafter.   Indeed, Plaintiff Maxime Diatta is the only named Plaintiff who was employed during that time and she alleges no such conduct on the part of any of the Defendants.   (See Diatta Dec. ¶ 2).

---

[3] However, as set forth in Point II below, Defendants contest the form of Plaintiffs' proposed notice and consent to sue.

Accordingly, the Court should limit certification of an FLSA collective action with respect to Plaintiffs' First Cause of Action for alleged overtime violations based on shift pay to the period September 2005 through March 2007. Plaintiffs' other purported collective and class action claims, however, are not susceptible to class adjudication for any period of time, as discussed below. Subject to the foregoing, Defendants respectfully request that Plaintiffs' motion for class certification be denied.

### C.   To The Extent Plaintiffs' First Cause of Action For Overtime Violations Is Based On Allegations of Underreported Hours Worked, Delayed Recognition of Hours Worked, and Altered Hourly Rates, It Should Not Be Certified As An FLSA Collective Action Because Plaintiffs Have Not Shown That They Are Similarly Situated To The Proposed Class Members.

Plaintiffs allege, without any specific facts, that Defendants underreported actual hours worked, altered hourly wage rates in paychecks, and delayed recognition of Plaintiffs' hours worked in an effort to diminish their overtime pay. (See Cmplt, ¶¶ 84 (B)-(D)). Plaintiffs have not made any evidentiary showing to support these utterly conclusory allegations, much less alleged any facts regarding same. (See generally Cmplt.) None of the Plaintiffs' declarations provide any substantive information relating to their Complaint other than their dates of employments and estimates of the number of "prep" and line cooks who worked at Country. (See Breland Dec. ¶¶ 2, 5; Diatta Dec. ¶¶ 2, 5; Coleman Dec. ¶¶ 2).

Dispositively, Plaintiffs have not alleged or shown any facts to suggest that Defendants underreported hours, altered wage rates, and delayed recognition of the hours of *other* potential plaintiffs. Under well settled law, this is insufficient to warrant certification of an FLSA collective action. See Mendoza v. Casa De Cambio Delgado, Inc., No. 07 cv 2579 (HB), 2008 WL 938584, at *2 (S.D.N.Y. Apr. 7, 2008) (denying collective certification because plaintiffs submitted "boilerplate and virtually identical" affidavits, none of which "purports a factual nexus with other putative employees"); Prizmic v. Armour, Inc., No. 05-cv-2503, 2006

WL 1662614, at *3 (E.D.N.Y. June 12, 2006) (denying collective certification because "plaintiff has not submitted any specific facts concerning his employment nor connecting his situation to others that he claims are similarly situated," "fails to describe or submit any documentation showing how he or anyone else employed by defendants were paid, what their job duties were or the hours they worked"); Flores v. Osaka Health Spa, Inc., No. 05 Civ. 962 (VM), 2006 WL 695675 at *3 (S.D.N.Y. Mar. 16, 2006) (denying collective certification where plaintiff's submissions "do not provide any factual information concerning the basis for plaintiff's 'understanding' of the quantum of work performed by 'other massage therapists' assigned to work during the shift on which [plaintiff] worked" and plaintiff's submissions "offer nothing of evidentiary value to support a finding that a factual nexus exists between the way the defendants allegedly compensated [plaintiff] and the way they may have compensated other employees"); Morales v. Plantworks, Inc., No. 05 Civ. 2349 (DC), 2006 WL 278154 at *2 (S.D.N.Y. Feb. 1, 2006) (denying collective certification where attorney affidavit and exhibits "contain no reference to any Plantworks employee other than plaintiffs, and they make no allegations of a common policy or plan to deny plaintiffs overtime," notwithstanding presentation of two payroll stubs supporting plaintiffs' claim that they were paid regular rate for overtime hours); Levinson v. Primedia, Inc., No. 02 Civ. 2222 (CBM), 2003 WL 22533428, at *2 (S.D.N.Y. Nov. 6, 2003) (denying collective certification because "plaintiffs' documentation is . . . limited to their own compensation" and "a demonstration of the similarity of circumstances of the existing plaintiffs is, of course, insufficient").

Moreover, leaving aside Plaintiffs' failure to proffer any evidentiary support, Plaintiffs' allegations regarding underreported hours and altered paychecks would require too individualized an inquiry to warrant collective relief under the FLSA. See Diaz v. Electronics

Boutique of Am. Inc., No. 04 Civ. 0840E, 2005 WL 2654270, at *5 (W.D.N.Y. Oct. 13, 2005) (allegations of working off the clock and altered timesheets are too individualized to warrant certification under § 216). In Diaz, the court denied the plaintiffs' motion for conditional certification because the plaintiffs' off-the-clock claim would have required the court to examine when plaintiff Diaz was scheduled to work, when he worked, and whether he was paid for his work, and then the court would have to conduct the same analysis for each class member. Id. Likewise, here, a determination of Plaintiffs' claims and the claims of the putative class members would require an examination of each individual's particular claims as to when and by how much their time was cut and when and for how long they allegedly worked off the clock.

Accordingly, based on the foregoing, Plaintiffs' motion for collective certification with regard to their First Cause of Action should be denied, with respect to any period of time, to the extent it is based on underreported hours worked, altered hourly wage rates in paychecks, and delayed recognition of Plaintiffs' hours.

**D.**   **To The Extent Plaintiffs' First Cause of Action For Overtime Violations Is Based On Defendants' Alleged Failure to Account for Meals Consumed, It Should Not Be Certified As An FLSA Collective Action Because Plaintiffs Have Not Shown That They Are Similarly Situated To The Proposed Class Members.**

Plaintiffs also allege that Defendants failed to include the value of meals consumed by Plaintiffs in their regular rates of pay.  (See Cmplt, ¶¶ 84 (E)).  "The regular hourly rate of pay of an employee is determined by dividing his total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid."  29 C.F.R. 778.109.

Plaintiffs have made no evidentiary showing (or even alleged) that they consumed meals in any workweek in which they were eligible for overtime pay.  More importantly, they have not shown that any of the Defendants failed to account for the meals of other potential plaintiffs in calculating their regular rates of pay for overtime purposes.  Plaintiffs' declarations make no mention of meals consumed at the restaurant by Plaintiffs or other putative class members.

Even assuming Plaintiffs' conclusory allegations were sufficient, examining these allegations would require too individualized an inquiry to warrant collective relief under the FLSA because the Court would have to inquire into the composition of the meals consumed to determine their value, when they consumed such meals, and how often they were consumed. Therefore, collective adjudication is inappropriate.

Accordingly, based on the foregoing, Plaintiffs' motion for collective certification with regard to their First Cause of Action should be denied to the extent it is based on Defendants' purported failure to account for meals provided in their regular rates of pay.

**E.**     **To The Extent Plaintiffs' First Cause of Action For Overtime Violations Is Based On Failure to Pay For "Trailing Time," It Should Not Be Certified As An FLSA Collective Action Because Plaintiffs Have Not Shown That They Are Similarly Situated To The Proposed Class Members.**

Plaintiffs further allege that Defendants failed to pay new hires for time spent "trailing" other "prep" and line cooks. (See Cmplt, ¶¶ 84 (F)). The Wage and Hour Division of the Department of Labor has established a six (6) part test for determining whether a trainee is in fact an employee subject to applicable minimum wage and overtime requirements. The test states:

> Whether trainees...are employees under the [Fair Labor Standards] Act will depend upon all of the circumstances surrounding their activities on the premises of the employer. If all of the following criteria apply, the trainees ... are not employees within the meaning of the Act:
>
> (1)   The training, even though it includes actual operation of the facilities of the employer, is similar to that which would be given in a vocational school;
> (2)   The training is for the benefit of the trainees or students;
> (3)   The trainees or students do not displace regular employees, but work under their close observation;
> (4)   The employer that provides the training derives no immediate advantage from the activities of the trainees... and on occasion his operations may actually be impeded;
> (5)   The trainees...are not necessarily entitled to a job at the conclusion of the training period; and
> (6)   The employer and trainees...understand that the trainees are not entitled to wages for the time spent training.

Archie v. Grand Cent. P'ship, 997 F. Supp 504 (S.D.N.Y. 1998) (citing Wage & Hour Manual (1980)).

Plaintiffs have made no evidentiary showing (or even alleged) that they were required to trail other "prep" and line cooks and that they were eligible for overtime in the particular workweek in which they did so. More importantly, they have not shown that Defendants failed to pay any other putative class members for their trailing time.

13

Further, Plaintiffs' trailing time allegation is not amenable to class certification because any training received would have been tailored to the specific role the individual played in the restaurant.   Accordingly, a pastry cook would not receive the same training as a cook on the meat station or salad station.   Furthermore, Plaintiffs' Complaint alleges that the "trail[ing]" period was for a "day or part of a day."   Given the implicit differences in the type and number of hours spent training, the Court would have to analyze each plaintiff's specific training to determine whether each individual's training satisfied the six-factor test above.   Notably, Plaintiffs have not set forth any facts which amount to a failure to meet the six-part test set forth by the Department of Labor.

Accordingly, based on the foregoing, Plaintiffs' motion for collective certification with regard to their First Cause of Action should be denied, with respect to any period of time, to the extent it is based on Defendants' purported failure to pay for "trailing time."

**POINT II**

**PLAINTIFFS' PROPOSED FORM NOTICE AND FORM CONSENT TO SUE SHOULD BE REVISED.[4]**

**A.**   **Regardless Of The Scope Of This Collective Action, Plaintiffs' Proposed Form Of Notice Must Be Modified**

Regardless of the scope of this collective action, the proposed Notice submitted by Plaintiffs cannot be used because (1) the proposed Notice is likely to confuse recipients and substantially prejudice Defendants; (2) the text of the proposed Notice is inaccurate and does not convey judicial neutrality; and (3) the proposed Notice is overly solicitous.

---

[4] For the Court's convenience, a proposed revised Notice and Consent to Sue, which incorporate all of Defendants' proposed revisions, are attached as Exhibit "A" to the "Declaration of Todd H. Girshon, Esq.," (hereinafter "Girshon Declaration" or "Girshon Dec.") submitted herewith.

1.      **The Text Of Plaintiffs' Proposed Notice Is Needlessly Confusing, Fails To Convey Judicial Neutrality And Is Overly Solicitous Of Claims**

(a)      The Notice Should Express Judicial Neutrality.

Any Notice issued must avoid the appearance that the action is sanctioned by the Court. See Libront v. Columbus McKinnon, 1984 WL 48915 (W.D.N.Y. Dec. 13, 1984). For this reason, a statement in the Notice should be included that provides:

> Although the Court has authorized Plaintiffs' counsel to send this notice, the Court expresses no opinion regarding the merits of the claims in this case, if any. Plaintiffs' claims and the claims of any person who joins the lawsuit may be subject to later dismissal if the Court finds that the claims lack merit or that this lawsuit cannot be litigated on a collective basis.

In addition, Plaintiffs' proposed self-serving and inflammatory language that "[t]his notice and its content have been authorized by the United States District Court . . ." must be removed.

(b)      The Notice Should Provide Full Disclosure Regarding The Nature Of The Defenses And The Obligations Of Class Members If They Join In.

Another defect in the proposed Notice is the dismissive reference to the defenses asserted in this action on page two at the end of section two. In fairness, a statement should be included in the introductory paragraph, after the description of Plaintiffs' claims, which provides:

> Defendants deny the allegations in this case and contend that Plaintiffs, and the other current and former employees whom they contend are "similarly situated," were paid properly and in accordance with applicable laws.

It should also be made clear to the recipient that by signing the consent form, the recipient designates the opt-in Plaintiffs as their agents to make decisions on the recipient's behalf concerning the litigation, the method and manner of conducting the litigation, the entering of an agreement with counsel concerning attorney's fees and costs and all other matters pertaining to the lawsuit. The class members must be advised that decisions and agreements

made and entered into by the named Plaintiffs will be binding on the recipient if he or she joins the lawsuit. It should further note that Plaintiffs have entered into a fee agreement with their counsel and that the recipients of the notice may inspect the fee agreement if they so choose.

In addition, it is important to alert recipients to their own potential involvement in the action, including a statement that, if they join the lawsuit, they may be required to provide documents, answers to interrogatories, sit for a deposition, or testify in Court in New York City. The inclusion of this provision is critical as many Plaintiffs who join the action, but later realize they must answer interrogatories or sit for a deposition, may decide they do not want to participate in the lawsuit and withdraw consent forms. The parties and the Court should not be burdened with filing and withdrawing consent forms, which could have been avoided had class members received full disclosure regarding their obligations.

Putative class members should further be advised to preserve any and all documents (both printed and electronic) that may relate to their employment, including any compensation paid to them, any hours that they worked, or any other information that relates to how they spent their time during the applicable period, such as e-mail correspondence, calendars, diaries, logs, date books, credit card statements, telephone records or similar materials.

Finally, the opt-in deadline should be shortened from 120 days to 60 days to ensure this matter is expeditiously resolved and the discovery period is not unduly prolonged.

## POINT III

### PLAINTIFFS' NEW YORK LABOR LAW CLAIMS SHOULD NOT BE CERTIFIED AS CLASS CLAIMS BECAUSE PLAINTIFFS CANNOT SATISFY THE REQUIREMENTS OF FED. R. CIV. P. 23.

Plaintiffs' Rule 23 motion to certify their Second and Fourth Causes of Action should also be denied. Plaintiffs Rule 23 motion is premature because the parties have not

exchanged any discovery to date.  Moreover, Plaintiffs' motion is wholly insufficient because

Plaintiffs have made no showing to satisfy the evidentiary requirements of Rule 23, as required

under recent Second Circuit case law.

### A.  Rule 23 Standards

Rule 23 of the Federal Rules of Civil Procedure permits certification of a class

only if the following four (4) prerequisites have been met:

> (1) the class is so numerous that joinder of all members is
> impracticable [i.e., numerosity]; (2) there are questions of law and
> fact common to the class [i.e., commonality]; (3) the claims or
> defenses of the representative parties are typical of the claims or
> defenses of the class [i.e., typicality]; and (4) the representative
> parties will fairly and adequately protect the interests of the class.
> [i.e., adequacy of representation]

Fed. R. Civ. P. 23(a).  In addition, a class will not be certified unless it also meets one of the

"more rigorous" three conditions imposed by Fed. R. Civ. P. 23(b) that: (1) separate actions

would create a risk of inconsistent judgments; (2) injunctive or declaratory relief is sought; or (3)

common questions predominate over the individual questions and a class action is superior to

other methods of bringing the suit.[5]  See generally Amchem Products v. Windsor, 521 U.S. 591

(1997).  A party seeking class certification bears the burden of showing that the requirements set

forth in Rule 23(a) have been satisfied, and that the putative class falls within one of the three

categories set forth in Rule 23(b).  See Caridad v. Metro-North Commuter Railroad, 191 F.3d

283, 291 (2d Cir. 1999), cert denied, 29 U.S. 1107 (2000).

Class certification should be granted only if the court is satisfied, after a "rigorous

analysis," that all of the Rule 23 requirements have been satisfied.  See General Telephone Co.

of Southwest v. Falcon, 457 U.S. 147, 161 (1982); Augustin v. Jablonsky, No. 99 Civ. 312

(ORH) (ARL), 2001 WL 770839, at *3 (E.D.N.Y. March 8, 2001) ("[c]ourts have considerable

---

[5] In this case, Plaintiffs seek class certification pursuant to Rule 23(b)(3). (Cmplt, ¶ 65).

discretion in determining whether to certify a class"). The Second Circuit recently set forth the following legal standards governing the adjudication a Rule 23 motion for class certification:

> (1) a district judge may certify a class only after making determinations that each of the Rule 23 requirements has been met; (2) <u>such determinations can be made only if the judge resolves factual disputes relevant to each Rule 23 requirement and finds that whatever underlying facts are relevant to a particular Rule 23 requirement have been established and is persuaded to rule, based on the relevant facts and the applicable legal standard, that the requirement is met</u>; (3) the obligation to make such determinations is not lessened by overlap between a Rule 23 requirement and a merits issue, even a merits issue that is identical with a Rule 23 requirement; (4) in making such determinations, a district judge should not assess any aspect of the merits unrelated to a Rule 23 requirement; and (5) a district judge has ample discretion to circumscribe both the extent of discovery concerning Rule 23 requirements and the extent of a hearing to determine whether such requirements are met in order to assure that a class certification motion does not become a pretext for a partial trial of the merits.

In re IPO Sec. Litig., 471 F.3d 24, 41 (2d Cir. 2006) (emphasis added).

**B.    <u>Plaintiffs' Rule 23 Motion Is Premature Because The Parties Have Not Exchanged Any Discovery and Plaintiffs Have Not Presented Sufficient Evidence To Satisfy The Rigorous Requirements of Rule 23.</u>**

"[T]he district judge must receive enough evidence, by affidavits, documents, or testimony, to be satisfied that each Rule 23 requirement has been met." <u>Id.</u> Contrary to Plaintiffs' assertions, the Court cannot merely deem the allegations of the complaint to be true. (See Pl. Mvg. Br. at 17). In addition, "now the district court must determine and resolve factual disputes relevant to each Rule 23 requirement." Mendoza v. Casa De Cambio Delgado, Inc., No. 07 cv 2579 (HB), 2008 WL 938584, at *2 (S.D.N.Y. Apr. 7, 2008) (citing In re IPO Sec. Litig., 471 F.3d at 40-43). A named plaintiff may not rest solely on the allegations of the complaint, but must develop a sufficient evidentiary record from which to conclude that the Rule 23 requirements have been met. See Pecere v. Empire Blue Cross and Blue Shield, No. 99 Civ. 3610 (ILG), 194 F.R.D. 66 (E.D.N.Y. 2000). Failure to do so precludes certification. See id.

"[A] decision about certification need not be made at the outset; a court should delay a certification ruling until information necessary to reach an informed decision is available." Ruggles v. Wellpoint, Inc., No. 08 Civ. 00201 (LEKRFT), 253 F.R.D. 61 (N.D.N.Y Sept. 24, 2008) (where plaintiffs filed wage-hour action on February 21, 2008 and filed motion to conditionally certify class on May 23, 2008, court declined to issue a ruling on certification, given limited information before the court).  Only after the parties have engaged in at least some limited discovery can the Court "assess all of the relevant evidence admitted at the class certification stage and determine whether each Rule 23 requirement has been met, just as the judge would resolve a dispute about any other threshold prerequisite for continuing a lawsuit." In re IPO Sec. Litig., 471 F.3d at 42; see Philip Morris Inc. v. Nat'l Asbestos Workers Medical Fund, 214 F.3d 132, 135 (2d Cir. 2000) (per curiam) ("[T]here can be no doubt that it is proper for a district court, prior to certification of a class, to allow discovery and to conduct hearings to determine whether the prerequisites of Rule 23 are satisfied.") (quoting Sirota v. Solitron Devices, Inc., 673 F.2d 566, 571 (2d Cir. 1982)); Sirota, 673 F.2d at 571 ("[A] district court may be reversed for premature certification if it has failed to develop a sufficient evidentiary record from which to conclude that the requirements of [Rule 23(a)] have been met.").  Discovery is especially necessary because "[t]he requirements for Rule 23 class certification are far more stringent than those for conditional collective action certification under § 216(b)." Cabrera v. 211 Garage Corp., No. 05 CV 2272 (GBD), No. 07 CV 7313 (GBD), 2008 WL 3927457 (S.D.N.Y. Aug. 22, 2008) (denying Rule 23 case certification because motion was "premature"; plaintiffs presented insufficient facts to support allegations and averments that an identifiable class of employees at defendants' garages were not paid proper overtime wages); Mendoza, 2008 WL 938584, at *3.  Inasmuch as Plaintiffs have submitted no affidavits containing any

substantive assertions of fact and the parties have not yet exchanged discovery, Plaintiffs' motion is completely premature and should be denied on that basis alone.

Accordingly, Plaintiffs' Rule 23 motion should be denied in all respects because it is premature.

**C.   Plaintiffs Have Not Established That Their Second Cause Of Action Is Susceptible To Class Adjudication.**

      **1.   Plaintiffs Cannot Satisfy The Requirements Of Rule 23(a).**

          (a)   Numerosity

Defendants do not dispute for purposes of this motion that Plaintiffs may be able to satisfy the numerosity requirement of Rule 23(a) with regard to their Second Cause of Action.

          (b)   Commonality

To satisfy the Rule 23(a)(2) requirement of commonality, a named plaintiff must demonstrate that common questions of law and fact are at the core of the class causes of action alleged. See Fed. R. Civ. P. 23(a)(2). Although commonality "does not mean that all issues must be identical as to each member . . . it does require that plaintiff identify some unifying thread among the members' claims that warrants class treatment." Kamean v. Local 363 et al, No. 83 Civ. 5125 (CLB), 109 F.R.D. 391, 394 (S.D.N.Y. 1986). It is well-settled that claims which require "highly individualistic determinations" run afoul of the commonality requirement of Rule 23(a)(2). See Pecere, 194 F.R.D. 66, 71 ("claims [which] require a 'highly-individualistic determination' militat[e] against certification [on commonality grounds]").

Plaintiffs allege that Defendants failed to pay Plaintiffs and the Rule 23 class overtime pay at the rate of 1.5 times the regular rate of pay for hours worked in excess of 40 per week. (Cmplt. ¶¶ 70, 93; see Pl. Mvg Br. at 20). Plaintiffs' reliance on citations to their Complaint is patently insufficient. Plaintiffs have presented no competent evidence to the Court

– documentary, anecdotal, or otherwise – that Defendants failed to properly pay Plaintiffs or other similarly situated employees for overtime hours worked for any period of time, or that Defendants underreported hours, changed hourly wage rates on paychecks, delayed recognition of hours for overtime purposes, failed to account for meals in Plaintiffs' regular rates of pay, or failed to pay for trailing time. (Cmplt. ¶¶ 84(A) to (F)). None of the Plaintiffs' declarations provide any substantive information relating to their Complaint other than their dates of employments and estimates of the number of "prep" and line cooks who worked at Country. (See Breland Dec. ¶¶ 2, 5; Diatta Dec. ¶¶ 2, 5; Coleman Dec. ¶¶ 2). Even if Plaintiffs could present such evidence, they cannot do so for any period subsequent to and including April 2007, when Country retained 3Sixty Hospitality, LLC, to provide back office bookkeeping services for the restaurant, including, among other things, payroll processing and administration. (Zakarian Dec. ¶ 11; see Cmplt, ¶¶ 44, 45(A), 45(d)). Indeed, Plaintiff Maxime Diatta is the only named Plaintiff who was employed during that time and she alleges no unlawful conduct on the part of Country with regard to herself or other putative class members. (See Diatta Dec. ¶ 2).

Accordingly, Plaintiffs have not met their burden of satisfying the commonality requirement of Rule 23.

        (c)    Typicality

The third requirement for class certification is that the court must find that "the claims and defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Where commonality looks to the relationship between the class members, typicality seeks to ensure that the class representatives' claims are sufficiently similar to the claims of the purported class. Falcon, 457 U.S. at 159. A named plaintiff's claims are "typical" under Rule 23(a)(3) only where each class members' claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's

liability.  See Dunnigan v. Metropolitan Life Ins. Co., No. 99 Civ. 4059 (SAS), 214 F.R.D. 125, 137 (S.D.N.Y. 2003).  While it is settled that the mere existence of individualized factual questions with respect to the class representative's claim will not preclude a finding of typicality, class certification is inappropriate on typicality grounds where a "putative class representative is subject to unique defenses which threaten to become the focus of the litigation." Id.

Again, Plaintiffs have presented no competent evidence to the Court – documentary, anecdotal, or otherwise – that Defendants failed to properly pay similarly situated employees for overtime hours worked for any period of time, or engaged in other unlawful conduct.  None of the Plaintiffs' declarations provide any substantive information relating to their Complaint.  (See Breland Dec. ¶¶ 2, 5; Diatta Dec. ¶¶ 2, 5; Coleman Dec. ¶¶ 2).  Even if Plaintiffs could present such evidence, they cannot do so for any period subsequent to and including April 2007.  Accordingly, Plaintiffs have not met their burden of satisfying the typicality requirement of Rule 23.

(d)     Adequacy of Representation

Defendants do not dispute for purposes of this motion that Plaintiffs may be able to satisfy the adequacy requirement of Rule 23(a) with regard to their Second Cause of Action or that Plaintiffs' class counsel is qualified to conduct the proposed litigation.

**2.      Plaintiffs Cannot Satisfy The More Rigorous Requirements of Rule 23(b).**

As set forth above, Rule 23(b)(3) permits class certification only "if the court finds that questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).

(a)     Individual Questions Predominate Over Common Issues.

In order to meet the "predominance" requirement of Rule 23(b)(3), a plaintiff must establish that there are issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, and that those issues predominate over those issues that are subject only to individualized proof.  See In re Visa Check/Master Money Antitrust Litigations, 280 F.3d 124 (2d Cir. 2001) (quoting Rutstein v. Avis Rent-A-Car Sys., Inc., 211 F.3d 1228 (11th Cir. 2000)).  The predominance requirement is "more stringent" and "far more demanding" than the commonality requirement of Rule 23(a)(2), see Dunnigan, supra, and is not met where the "resolution of individual claims for relief would require individual inquiries." Id. at * 138 (citing Augustin, 2001 WL 770839, at * 13 (finding individualized issues of causation predominate despite plaintiffs' showing of commonality under Rule 23(a)(2)).

Courts in this Circuit and throughout the country have become increasingly skeptical about certifying class actions pursuant to Rule 23(b)(3) involving wage-hour or other employment-related disputes.  See Dunnigan, supra (denying certification to putative class asserting ERISA violations); Radamanovich v. Combined Ins. Co., No. 01 Civ. 9502 (JHA), 214 F.R.D. 424 (N.D. Ill. 2003) (denying certification to putative class asserting wage-hour violations; individual issues predominate); Basco v. Wal-Mart, 216 F. Supp. 2d 592 (E.D. La. 2002) (same).  Tellingly, in Basco, the Court held that class certification was precluded by "the myriad of possibilities that could be offered to explain why any one of the plaintiffs worked off the clock. . . including":

> (1) the particular class member did not in fact work off-the-clock, (2) any instructions received to work off-the-clock without compensation were outside the scope of authority and directly contrary to well established policy and practice, (3) even if a particular class member did work off-the-clock, that employee reasonably failed to avail themselves of proactive steps provided by defendant to be compensated for that work, (4) if a class member received instructions from a fellow class member such as

a personnel manager or hourly supervisor to work off-the-clock and/or not to request a time adjustment, then the class member unreasonably relied on instructions directly contrary to Wal-Mart's express policy, (5) a class member had an actual and/or constructive knowledge of Wal-Mart's policies banning off the clock work and voluntarily chose to engage in such work in deviance of that policy for any one of a number of reasons, and (6) that a particular class member has a unique animus toward Wal-Mart or its employees that would cause that class member to fabricate or inflate his or her claims.

Basco, 216 F. Supp. 2d at 603. These cases underscore the inherent difficulty of certifying a class of employees with individual claims against their employer.

Here, Plaintiffs allege in conclusory fashion that they were not paid for overtime hours worked. (Cmplt. ¶¶ 70, 93). Plaintiffs have presented no competent evidence to the Court – documentary, anecdotal, or otherwise – that Defendants' allegedly improper pay practices affected them on a general rather than individualized basis, especially for any period subsequent to and including April 2007. Accordingly, Plaintiffs have not met their burden of satisfying the predominance requirement of Rule 23.

        (b)     The Purported Class Action Is Not Superior To Individual Actions

The superiority question under Rule 23(b)(3) requires a court to consider whether a class action is superior to other methods of adjudication. See Dunnigan, 214 F.R.D. at 142. The factors relevant to the "superiority" of the class action include: (a) the interest of the members of the class in individually controlling the prosecution or defense of separate actions; (b) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (c) the difficulties likely to be encountered in the management of the class action. See id. Significantly, a class action is not a "feasible, let alone superior method for the fair, efficient and manageable adjudication" of putative class members' claims if a court would be "required to conduct a series of mini-trials" as to each claim. Dunnigan, supra; see Potchin v.

Prudential Home Mortg. Co., No. 97-CV-525 (CBA), 1999 WL 1814612, at *9 (E.D.N.Y. November 12, 1999) (denying certification of a proposed class where a "detailed examination of the facts of each transaction" at issue could not be avoided); Pecere, 194 F.R.D. at 72 (denying class certification and noting that where individual issues of fact predominate over common issues of fact, a class action is not a "superior method for fair and efficient adjudication").

Here, the factual basis of Plaintiffs' Second Cause of Action for overtime violations is unclear. To the extent Plaintiffs claim that Defendants allegedly failed to pay them for any overtime hours worked, they have presented no evidence (or even alleged any facts) to substantiate their claim. To the extent Plaintiffs allege that overtime violations stem from actions such as Defendants' purported underreporting of hours, changing hourly wage rates on paychecks, delaying recognition of hours for overtime purposes, failing to account for meals in Plaintiffs' regular rates of pay, or failing to pay for trailing time, Plaintiffs' conclusory allegations are insufficient. (Cmplt. ¶¶ 84(A) to (F)). Moreover, it is obvious that the Court would have to undertake fact-intensive "mini-trials" to examine each of these alleged improper practices with respect to each putative class member in determining the validity of Plaintiffs' allegations. Accordingly, Plaintiffs have not met their burden of satisfying the superiority requirement of Rule 23.

**D.      Plaintiffs Cannot Establish That Their Fourth Cause of Action Is Susceptible to Class Adjudication.**

An employer in the restaurant industry is permitted to include a meal allowance as part of an employee's wages. 12 N.Y.C.R.R. § 137-1.9(a). See also Request for Opinion Meal Credit for Restaurant Industry – 12 N.Y.C.R.R. § 137-1.8(a), Op. NYSDOL Counsel's Office (November 10, 1995) (confirming "it is lawful for an employer to deduct [meal] allowances as

part of an employee's wages").[6]  In determining what constitutes a meal, the applicable provisions state that "[a] meal shall provide adequate portions of a variety of wholesome, nutritious foods and shall include at least one of the types of food from all four of the following groups: (1) fruits or vegetables; (2) cereals, breads or potatoes; (3) eggs, meat, fish or poultry; and (4) milk, tea or coffee[.]"  12 N.Y.C.R.R. § 137-1.8(a).  <u>Tellingly, not a single New York court has certified a collective or class action based upon alleged violations of 12 N.Y.C.R.R. § 137-1.9(a).</u>

Plaintiffs vaguely allege that Defendants took unlawful deductions from their wages for "leftover scraps and other foodstuffs."  (Cmplt. ¶¶ 109, 111).[7]  However, as discussed in Points II.B.1 and II.B.2 above, Plaintiffs cannot satisfy the commonality, typicality, predominance, or superiority requirements of Rule 23 because they have presented no evidence that the meals Country provided to them failed to satisfy local regulatory requirements.[8]  Indeed, Plaintiffs do not identify a <u>single specific meal</u> which failed to meet the requirements set forth in 12 N.Y.C.R.R. Section 137-3.8.  On the contrary, the composition of the meals was completely lawful and proper.  The meals consisted of adequate portions of nutritious high-quality foods, including at least one type of food of from each of the four food groups set forth in local regulations.  (Zakarian Dec. ¶ 20).  Furthermore, Plaintiffs cannot be heard to complain about these meals because, as prep and line cooks, they exercised a great deal of control regarding the

---

[6] A true and correct copy of the Request for Opinion and the Minimum Wage Order for the Restaurant Industry, codified at 12 N.Y.C.R.R. § 137-1.1 <u>et seq.</u>, are attached as Exhibit "B" to the Girshon Declaration.

[7] Plaintiffs also allege that Defendants withheld monies from Plaintiffs' paychecks and that such monies were not transmitted to the appropriate federal tax officials.  Plaintiffs have not presented any evidence regarding same. Moreover, Plaintiffs do not apparently contend that the withholding of monies was unlawful.  They apparently believe, however, that the purported failure to transmit the monies was improper.  However, they have not presented any arguments explaining how Defendants' purported failure to transmit such monies damaged them in a way that subjects Defendants to liability under NYLL § 193.

[8] Plaintiffs apparently do not contend that the amounts of the deductions taken for meals were improper.

selection and preparation of these meals insofar as they generally cooked and prepared such meals for each other.  (Zakarian Dec. ¶ 21).

Moreover, Plaintiffs' Fourth Cause of Action is not amenable to class certification because the composition of these meals changed from day to day and shift to shift, depending on the foods available in Country's kitchen and the items selected for the restaurant's menu. (Zakarian Dec. ¶ 19).  It cannot be said that all potential plaintiffs received the same meals, given each potential plaintiff's varying dates of employment.  To adjudicate such a claim on a class-wide basis, the Court would have to undertake a litany of mini-trials to determine whether each separate meal provided, on each shift, on each day, of the entire statutory period, met the requirements of 12 N.Y.C.R.R. § 137-3.8.  Such highly individualized inquiries preclude class certification.

## DEFENDANTS' CROSS-MOTION
## TO DISMISS PLAINTIFFS' THIRD CAUSE OF ACTION

Plaintiffs' Third Cause of Action, which alleges a violation of the FLSA's prompt payment requirement based upon NYLL requirements governing the timing of wage payments, should be dismissed, with prejudice, because it attempts to re-write the FLSA and the case law thereunder, to create a cause of action where none exists. Simply stated, the FLSA does not prohibit employers from paying employers on a bi-weekly or semi-monthly basis. Therefore, Plaintiffs should not be permitted to recover potentially ruinous FLSA liquidated damages (which are not recoverable under the New York law itself in a class action) for paying employees in this manner. Plaintiffs' attempt to cherry-pick provisions of the FLSA and NYLL essentially performs an "end run" around the plain text of each of these laws. The FLSA does not provide the remedy Plaintiffs seek and the Court should reject Plaintiffs' misguided attempt to craft such a remedy for themselves.

## ARGUMENT

## POINT I

## STANDARD OF REVIEW FOR MOTIONS FOR JUDGMENT ON THE PLEADINGS

The standard for Rule 12(c) motions for judgment on the pleadings is the same as that for motions to dismiss under Rule 12(b)(6). Cleveland v. Caplaw Enters., 448 F.3d 518, 521 (2d Cir. 2006). Although under Rule 12(b)(6), a court must accept all factual allegations in the complaint drawing all reasonable inferences in favor of the plaintiff, the complaint must nonetheless "provide the grounds upon which [plaintiff's] claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" ATSI Comm'ns Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1959 (May 21, 2007)). "[C]onclusory allegations or legal conclusions

masquerading as factual conclusions will not suffice to prevent a motion to dismiss." <u>Smith v. Local 819 I.B.T. Pension Plan</u>, 291 F.3d 236, 240 (2d Cir. 2002).

<b><u>POINT II</u></b>

<b><u>THE FLSA REQUIRES ONLY "PROMPT" PAYMENT OF WAGES AND COURTS HAVE REPEATEDLY CONFIRMED THAT COUNTRY'S ALLEGED PAY PRACTICES DO NOT VIOLATE THE FLSA</u></b>

**A.**      <b><u>The FLSA and the Federal Prompt Payment of Wages Standard</u></b>

The FLSA provides that the employer shall pay its employees not less than the minimum wage, but fails to set forth when this wage should be paid. 29 U.S.C. § 206 (b) Plaintiffs readily concede this fact in their judicial Complaint. (Cmplt. ¶ 97). For seventy years since the FLSA's enactment, federal courts have required only that wages be paid regularly and promptly on a predetermined payday of reasonable frequency. Plaintiffs now seek to allege that the "objective standard" governing the FLSA is the New York Labor Law. (Cmplt. ¶ 98). Plaintiff cites no statutory or judicial support for such a proposition because, indeed, none exists. (Cmplt. ¶¶ 96-105). This absence of support for Plaintiffs' position derives from the longstanding principle that "Congress when it enacts a statute is not making the application of the federal act dependent on state law" because "the application of federal legislation is nationwide." <u>United States v. Savin</u>, 349 F.3d 27, 34 (2d Cir. 2003) (citing <u>Jerome v. United States</u>, 318 U.S. 101, 104 (1943)).

Courts have consistently interpreted the FLSA's minimum wage requirement to include a prompt payment requirement implicit in the statute. <u>See</u> <u>e.g.</u>, <u>United States v. Klinghoffer Bros. Realty Corp.</u>, 285 F.2d 487, 491 (2d Cir. 1960) ("While the FLSA does not expressly set forth a requirement of prompt payment, such a requirement is clearly established by the authorities"); <u>Mathis v. About Your Smile, P.C.</u>, No. 02-CV-597, 2002 WL 1878894 at *5

29

(E.D. Pa. Aug. 14, 2002) ("The governing principle of law is that an employer must pay its employees at least minimum wage on payday."); Morales-Arcadio v. Shannon Produce Farms, Inc., No. 605CV062, 2007 WL 2106188, at *19-20 (S.D. Ga. July 18, 2007). However, this requirement is not quantified into a specific "schedule" requirement governing frequency of payment or length of the pay period. In short, "there is nothing in the [FLSA] that says a pay period has to be one week only or that employees must be paid weekly. A pay period can be one week, two weeks, or a month." Marshall v. Allen-Russell Ford, Inc., 488 F. Supp. 615, 618 (E.D. Tenn. 1980).

Terms regarding frequency of pay and duration of pay period are thus left to the discretion of the parties. Luther v. Z. Wilson, Inc., 528 F. Supp. 1166, 1174 (S.D. Ohio 1981) ("the relevant pay period is determined from the actual pattern of payments adopted by the parties"); see also U.S. Department of Labor ("USDOL") Wage and Hour Opinion Letters No. 1296 (WH-244) (Nov. 27, 1973) and No. 116 (Aug. 2, 1962). The USDOL has confirmed not only the legality of these various payment schedules, but that employers and employees are free to contract for any regular pay period. Wage and Hour Opinion Letter No. 63 (Nov. 30, 1961).[9]

Plaintiffs nevertheless attempt to "read" greater specificity into this FLSA requirement by reference to the New York Labor Law, claiming "[t]he objective standard governing the timing of the payment of Plaintiffs' wages is set forth in New York Labor Law." (Cmplt. ¶ 98).[10] This assertion is a misstatement of law and an attempt to circumvent the lawful arrangement between the parties under the FLSA. Moreover, it is fatal to Plaintiffs' claim. No

---

[9] True and correct copies of these Wage and Hour Opinion Letters are attached to the accompanying Girshon Declaration as Exhibits "C," "D," and "E."

[10] Presumably, this assertion is based on the New York Labor Law's requirement that "manual workers" receive the payments required by its minimum wage provision "weekly and not later than seven calendar days after the end of the week in which the wages are earned." New York Labor Law § 191(1)(a).

Court has ever read such a requirement into the FLSA, and the one Court identified to have considered such a proposal rejected it outright, as discussed in Point III below.

**B.    Defendants' Undisputed Pay Practices As Alleged In the Third Cause of Action Comply With The FLSA's Prompt Payment Standard As A Matter Of Law.**

Plaintiffs' Third Cause of Action does not dispute, and in fact affirms, that Plaintiffs were paid in conformity with the "prompt" payment standard outlined above. The Complaint does not allege that Plaintiffs were paid irregularly, or that they were not paid for particular pay periods. Rather, they simply claim that Country's regular pay schedule violates the FLSA minimum wage payment requirements. (See Cmplt. ¶¶ 99, 102-03). In so alleging, Plaintiffs have "pleaded themselves out of Court" with respect to the FLSA minimum wage claim in the Third Cause of Action. Suthers v. Amgen Inc., 441 F. Supp. 2d 478, 482 (S.D.N.Y. 2006) (citing Jackson v. Marion County, 66 F.3d 151, 152 (7th Cir. 1995) (Posner, J); Wynn v. NBC, 234 F. Supp. 2d 1067, 1101 (C.D. Cal. 2002)). They have "facts which show that [they have] no claim" for minimum wage violations under the FLSA. Suthers, 441 F. Supp. 2d at 482.

Indeed, the Eleventh Circuit recently addressed an identical claim for "systemically" late minimum wage payments under the FLSA. Arroyave v. Rossi, No. 08-12008, 2008 WL 4605949 (11th Cir. Oct. 17, 2008).[11] The District Court in that case reviewed the relevant case law in the context of the plaintiff's claim that his payday, which occurred "ten days after the accrual" of his wages, was insufficiently prompt, and held that the FLSA requires wages be paid in a "regular and timely fashion." Arroyave v. Rossi, No. 07-CV-20156 (S.D. Fla.

---

[11] The Third Cause of Action pertains only to the promptness of minimum wage payments under the FLSA. It does not allege a failure to make prompt overtime or other payments under the FLSA, which are governed by separate provisions, regulations and case law. See 29 U.S.C. § 207; 29 CFR § 778.106; Parker v. City of New York, No. 04 cv 4476 (BSJ), 2008 WL 2066443 (S.D.N.Y. May 13, 2008). While the law concerning timing of FLSA overtime payments is no more applicable than the New York Labor Law to Plaintiffs' FLSA minimum wage claims, Defendants submit that the pay practices alleged in the Third Cause of Action would comply with this separate FLSA standard as well. Id. at *10-12 (city's practice of paying second week of overtime in subsequent pay period did not systemically violate FLSA overtime payment requirements).

Mar. 12, 2008) ("Plaintiff appears to miscomprehend the cited authority by essentially arguing that the pay day and the end of the pay period must be the same day.  This simply is not true. Rather, the FLSA requires wages be paid in a regular and timely fashion").

The Eleventh Circuit affirmed, collecting cases holding that, under the FLSA, wages are due on payday, and observing that the plaintiff had identified "no cases that have held that a ten-day delay between the end of the pay period and payday is unreasonable." Arroyave, 2008 WL 4605949, at *2.  Here, Defendants' alleged pay practices were regular and reasonably consistent with those at issue in Arroyave and the federal authorities cited above.  Plaintiffs allege that, with isolated exceptions, they were regularly paid either bi-weekly or semi-monthly. (See Cmplt. ¶¶ 99, 102-14).[12]

### C.   Plaintiffs' Third Cause of Action Is A Thinly Disguised Attempt to Circumvent the Limitations On Remedies Available Under the New York Labor Law

Plaintiffs' interest in imputing the Labor Law's frequency of payment requirement to the FLSA is obvious: the creation of a new remedy where none exists.  This is because the remedy actually authorized for violations of the New York Labor law §191(1)(a) requirement Plaintiffs invoke is a 25% penalty, which is available only for "willful" violations, as opposed to the "automatic" 100% liquidated damages available for FLSA violations. Compare N.Y. Labor Law § 198 with 29 U.S.C. § 260.[13]

Furthermore, while Plaintiffs' Complaint purportedly seeks to represent all similarly situated persons under Fed. R. Civ. P. 23, in order to continue to proceed as a class

---

[12] Plaintiffs allege that they were paid "no less frequently than once every two weeks."  (Cmplt. ¶ 99).  This allegation is internally inconsistent with paragraphs 103-105 of the Complaint, which allege a pay schedule in fact less frequent than every two weeks.  This internal inconsistency further militates against finding that the Third Cause of Action states a violation of law.  See generally AMPARO v. INS, 32 F. Supp. 2d 1337, 1343 (S.D. Fla. 1998) ("Courts must liberally construe and accept as true allegations of fact in the complaint and inferences reasonably deductible therefrom, but need not accept factual claims that are internally inconsistent").

[13] Since Plaintiffs do not dispute that they received the minimum wage payments in question, damages, if any, would be limited to liquidated damages as compensation for making wage payments belatedly in violation of law.

action and seek certification of any class, Plaintiffs would be required to <u>waive all liquidated</u> <u>damages under the New York Labor Law</u>. <u>See</u> <u>Myers v. Hertz Corp.</u>, No. 02-CV-4325 (BMC), 2007 WL 2126264, at *7 (E.D.N.Y. July 24, 2007) ("Plaintiffs suing under the NYSLL who wish to pursue a class action must make at least one significant sacrifice over people who sue individually -- waive their entitlement to recover liquidated damages").[14]   Indeed, Plaintiffs apparently recognize this fact and do not seek liquidated damages for their NYLL claims.  (<u>See</u> Cmplt, Prayer for Relief, ¶ (D)).  "Thus, absent their novel and unsupported theory of FLSA damages, Plaintiffs cannot prosecute a class action claim under NYLL §191(1)(a).

<b><u>POINT III</u></b>

<b><u>AT LEAST ONE FEDERAL COURT HAS REJECTED AN<br>ATTEMPT TO READ STATE LAW TIMING OF PAYMENT<br>REQUIREMENTS INTO THE FLSA AND THIS COURT<br>SHOULD FOLLOW ITS REASONING</u></b>

Not only does the FLSA permit the commonplace bi-weekly and/or semi-monthly pay period described above but Plaintiffs herein are not the first to seek to improperly marry the FLSA's "prompt payment" requirement with a state statute fixing a specific timetable for the payment of the minimum wage.  In <u>Basinger v. Wal-Mart Stores, Inc.</u>, No. 98-334-P-H, 1999 WL 33117106 (D. Me. Jan. 27, 1999) <u>adopted by</u> <u>Basinger v. Wal-Mart Stores, Inc.</u>, No. 98-334-P-H (D. Me. Mar. 9, 1999), the plaintiffs made substantially identical allegations in attempting to read the weekly payment requirement contained in then-current 26 M.R.S.A. § 621 into the FLSA.  <u>Id</u>. at * 2 (D. Me. Jan. 27, 1999).  The plaintiffs argued, like Plaintiffs here, that the state

---

[14]  Additionally, one Court has recently suggested that Plaintiffs seeking to bring claims under New York Labor Law § 191 must first exhaust the administrative remedies outlined in New York Labor Law § 196, a further obstacle Plaintiffs now seek to circumvent as there is no evidence that they even attempted to exhaust the administrative procedure before instituting the instant action.  <u>Jara v. Strong Steel Door, Inc.</u>, 2008 NY Slip Op 51733U, 15, 20 Misc. 3d 1135A (N.Y. Sup. Ct. 2008) ("It is noted, moreover, that Labor Law § 196 contained within Article 6, sets forth a structure for administrative review of claims brought under that Article analogous to that contained in Labor Law § 220, suggesting that exhaustion of administrative remedies would also be a prerequisite to suit under Labor Law § 191").

statute should define the "timeliness of payment for purposes of federal case law interpreting the FLSA." Id at *4.

In analyzing this proposed interweaving of state and federal wage laws, the Basinger court relied on "the widely accepted principle," noted above, that, "in the absence of plain indication of a contrary intent, courts ought to presume that the interpretation of a federal statute is not dependent upon state law." Id. at * 4 (citing Serapion v. Martinez, 119 F.3d 982, 987 (1st Cir. 1997)). The Basinger court found no such intent to rely upon state wage laws in the FLSA, which it held was intended to create a uniform federal minimum wage standard. Basinger, 1999 WL 33117106 at *5 ("Congress intended [the FLSA] to achieve a uniform national policy of guaranteeing compensation for all work or employment engaged in by employees governed by the Act") (quoting Barrentine v. Arkansas-Best Freight Sys., 450 U.S. 728, 740 (1981)).[15]

The court rejected the plaintiffs' argument for a more specific standard based on Maine state law, noting "in this case the plaintiffs seek to use state law in the interpretation of a federal statute in a manner that will create a federal remedy for violation of that state statute in addition to one already provided by state law." Basinger, 1999 WL 33117106 at * 5 (emphasis added). As the court observed, "without the state statute, the plaintiffs have no 'case' at all under the FLSA.  The plaintiffs offer no authority to support a resort to state law under such circumstances." The reasoning in Basinger applies with equal force to Plaintiffs' Third Cause of

---

[15] This observation best highlights the legally untenable nature of the Third Cause of Action.  Should the Court permit a cause of action under the FLSA predicated on a standard contained in New York state law, the federal uniformity of the FLSA would be destroyed, as "prompt" payment under the FLSA would be determined on a state-by-state basis, depending on the vagaries of state law.  Or, alternatively, the New York Labor Law standard would become the de facto wage payment law of all fifty states, and every biweekly or semi-monthly payday in the entire United States would be per se unlawful.  Each result is ludicrous, and neither is permissible nor legally tenable. Moreover, the financial burden associated with such a drastic change in federal wage payment requirements would bankrupt employers nationwide.

Action here.  Plaintiffs' attempt to create a federal cause of action out of whole cloth should be rejected.

## CONCLUSION

Based on the foregoing facts and controlling authorities, Defendants respectfully submit that: (1) Plaintiffs' motion requesting the Court to: (a) grant Plaintiffs permission to proceed as a collective action under the Fair Labor Standards Act should be denied except to the extent it is based upon Plaintiffs' shift pay claims for the period September 2005 through March 2007; (b) certify a class action pursuant to Federal Rules of Civil Procedure 23 with respect to Plaintiffs' state law claims should be in all respects denied, with prejudice; (2) Plaintiffs' proposed form notice and proposed form consent to sue should be revised; and (3) Plaintiffs' Third Cause of Action should be dismissed in its entirety with prejudice as a matter of law.

Respectfully submitted,

JACKSON LEWIS LLP
59 Maiden Lane, 39th Floor
New York, New York 10038-4502
(212) 545-4000

By:_____
Todd H. Girshon (TG 7947)
Matthew A. Steinberg (MAS 3979)
Ravindra K. Shaw (RS 1944)

ATTORNEYS FOR THE COUNTRY DEFENDANTS
AND THE CARLTON HOTEL DEFENDANTS

Dated: November 25, 2008
         New York, New York